IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| STA GROUP LLC, § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | CIVIL ACTION NO. 2:22-cv-0381-JRG-RSP |
| § | |
| MOTOROLA SOLUTIONS, INC., § | |
| § | |
| *Defendant.* § | |

**REPORT AND RECOMMENDATION**

Before the Court is Defendant Motorola Solutions, Inc.'s Motion to Dismiss. **Dkt. No. 13**. In the motion, Motorola argues that (1) three of the patents-in-suit are drawn to ineligible subject matter under 35 U.S.C. § 101, and (2) Plaintiff STA Group LLC fails to plead a plausible claim of infringement for any patent. For the following reasons, the Motion should be **DENIED**.

**I.    BACKGROUND**

STA alleges that Motorola infringes U.S. Patent Nos. 7,324,802 (the "'802 Patent"), 8,489,134 (the "'134 Patent"), 8,994,830 (the "'830 Patent"), and 8,831,664 (the "'664 Patent"). Complaint, Dkt. No. 1 at ¶¶ 16, 20, 24, 28. The asserted patents generally relate to communication systems and methods. Motorola contends claim 1 is representative, which STA does not dispute. *See* Reply, Dkt. No. 37 at 5–6 n.1.[1] Nevertheless, Motorola addresses each of the claims in the Asserted Patents. The parties dispute whether claim construction is required before the claims can be properly analyzed under § 101. Joint Letter, Dkt. No. 25-1.

---

[1] Citations, including page numbers correspond to those assigned through ECF.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court can dismiss a complaint that fails to state a claim upon which relief can be granted. To survive dismissal at this early stage, a complaint must state enough facts such that the claim to relief is plausible on its face. *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads enough facts to allow the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts well-pleaded facts as true and views all facts in the light most favorable to the plaintiff but is not required to accept the plaintiff's legal conclusions as true. *Id.*

The Court must limit its review "to the contents of the pleadings." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). However, documents attached to a defendant's motion to dismiss may be considered a part of the pleadings if they are referred to in the complaint and are central to the claim. *Id.*

### B. Patent Eligibility

The Court will grant a motion to dismiss for lack of patent eligibility under 35 U.S.C. § 101 only where "there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019).

The Court determines whether patent claims cover ineligible subject matter using a two-step analytical framework set out by the Supreme Court of the United States in *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014). At the first step, the Court evaluates whether the claims are

directed to ineligible subject matter, such as an abstract idea. *Id.* at 217. The Court looks to the claims' "character as a whole." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). While all claims embody abstract ideas and other ineligible subject matter at some level, the Court's task is to examine whether the claims "focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016).

At *Alice* step two, if the claims are directed to ineligible subject matter, the Court then determines whether the claims contain an "inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Alice*, 573 U.S. at 217–18 (internal citations and quotes omitted). "[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces," *BASCOM Glob. Internet Svcs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349–50 (Fed. Cir. 2016), but must be more than mere "'well-understood, routine, conventional activit[ies].'" *Alice*, 573 U.S. at 225 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012)). "While the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1127–28 (Fed. Cir. 2018). "The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

### III. ANALYSIS

Motorola initially argues that the '802 Patent, the '830 Patent, and the '664 Patent are ineligible under 35 U.S.C. § 101 because they fail both steps of the *Alice* framework. Next, Motorola contends that STA's complaint fails to plead a plausible claim of infringement as to any of the Asserted Patents. The Court addresses these issues in turn.

### A. Patent Eligibility

The Court proceeds under the two-part test outlined in *Alice*. The Court need not resolve the claim construction issues to resolve the disputes raised in the motion. Viewing all disputed facts and inferences in favor of STA, the Court is not persuaded that any of the claims are directed to an abstract idea at step one.

#### 1. *The '664 Patent is Not Ineligible*

The '664 Patent, titled "System and Method for Providing Channel Configurations in a Communications Environment," issued on September 9, 2014, and bears a filing date of August 16, 2011.'664 Patent, Dkt. No. 1-5 at Cover. The '664 Patent describes and claims methods for adjusting how an alert message is provisioned to an endpoint in a communication environment. *See generally*, *id.* In conventional systems, channels are statically configured such that the volume of each channel needs to be manually adjusted. *Id.* at 1:36–38. In addition, a management center may involve multiple channels that can be categorized and routed based on importance, such as routing more important channels to one ear and less important channels to the other ear. *Id.* at 1:33–36; 3:30–55.

The '664 Patent explains that problems arise when a priority message is transmitted on a non-priority channel. For example, a police officer may use a radio system in which audio can be directed to the left ear or right ear. *Id.* at 3:30–39. The system may be configured such that the left

4

ear receives passive communications on a non-priority channel and the police officers may have the volume of that channel turned down. *Id.* at 3:30–45. An alert message may be transmitted on that non-priority channel, and that message may be inadvertently missed. *Id.* at 3:45–55.

The claimed invention solves the problem by identifying specific priority messages, such as alerts, on different channels and elevating priority associated with those messages by adjusting how the media stream is provisioned to an endpoint in the communication environment. *Id.* at 3:56–4:9, *see also* 8:31–39 (claim 1). Thus, the inventive communication system can identify an alert message sent on a non-priority channel and respond in any number of ways to ensure that the message was properly received. *Id.* at 3:56–59.

> Claim 1 of the '664 Patent recites:
>
> 1. A method, comprising:
>    monitoring media streams associated with channels in a communication environment;
>    receiving an alert in one of the media streams; and
>    elevating a priority associated with the media stream receiving the alert, such that an adjustment is made to how the media stream is provisioned to an endpoint in the communication environment.

*Id.* at 8:31–39.

Claim 1 is directed to media streams in a communication network where the priority of a media stream receiving an alert is elevated by adjusting how the media stream is provisioned to an endpoint. *Id.*; *see also id.* at Abstract.

First, Motorola argues that claim 1 is directed to activities that can be performed by human dispatchers in a call management center, as they have been for decades. Motion, Dkt. No. 13 at 8. According to Motorola, there is no meaningful difference between claim 1 and cases holding claims directed to the abstract idea of long-prevalent practices performed by humans. *Id.* at 8–9 (citing *Parus Holdings, Inc. v. Sallie Mae Bank*, 137 F. Supp. 3d 660 672 (D. Del. 2015) (holding

claims reciting unified messaging service accessible from any standard communication device to provide voice command of personal, professional, or public information were directed to abstract or "pre-Internet analogs" performed by humans, such as personal assistant directing calls), *aff'd*, 677 Fed. App'x 682 (Fed. Cir. 2017); *Voip-Pal.Com, Inc. v. Apple Inc.*, 375 F. Supp. 3d 1110, 1134 (N.D. Cal. 2019) (holding claims reciting a call routing controller to facilitate communication in multi-node system and a packet-switched network were directed to abstract idea of routing calls, which has long been performed by switchboard operators), *aff'd sub nom. Voip-Pal.com, Inc. v. Twitter, Inc.*, 798 F. App'x 644 (Fed. Cir. 2020); *Telinit Techs., LLC v. Alteva, Inc.*, No. 2:14-CV-369, 2015 WL 5578604, at *16 (E.D. Tex. Sept. 21, 2015) (holding claims reciting method for initiating telephone calls on voice network in response to requests from data network were directed to abstract idea of using intermediary to place and monitor telephone calls)).

      The Court disagrees. Claim 1 identifies a priority communication before it is conveyed and pre-emptively adjusts how it is provisioned in a media stream to an endpoint in a communication environment. Unlike the cases Motorola cites, claim 1 involves more than the routing or initiating calls tasks. In certain respects, claim 1 bears similarities to the claims in *SRI Int'l, Inc. v. Cisco Sys., Inc.* 930 F.3d 1295, 1304 (Fed. Cir. 2019) (holding claims directed to identifying hackers or potential intruders into a network were patent-eligible and explaining the human mind is not equipped to detect suspicious activity by using network monitors and analyzing network packets).

      While the claim language governs, the specification may sometimes assist in determining whether the claims are directed to an abstract idea. *In re TLI Commc'ns LLC Patent Litigation*, 823 F.3d 607, 611 (Fed. Cir. 2016); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1129 (Fed. Cir. 2018) (considering the specification at the motion to dismiss stage). In light of the specification, claim 1 embodies technology-based solutions that improve prioritizing alerts

in a communication system. *See e.g.* '664 Patent, Dkt. No. 1-5 at 3:56–4:5 (describing intelligent response), 5:15–30 (describing UMS modification of media stream and/or volume), 6:6–23 (describing management center duplicating alert, adjusting volume, and spatially moving priority direction), 7:49–59 (describing how system resolves conflicts between one or more alerts).

Second, Motorola argues that claim 1 is analogous to claims that merely recite collecting, manipulating, and displaying data. Motion, Dkt. No. 13 at 8–9 (citing *West View Rsch., LLC v. Audi AG*, 685 F. App'x 925, 925–926 (Fed. Cir. 2017) (holding claims reciting a computerized apparatus capable of interactive information exchange with a user, display, speech apparatus, speaker, input apparatus, and computer were directed to the abstract idea of collecting, analyzing, and displaying information); *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1339 (Fed. Cir. 2017) (holding claims reciting an apparatus for manipulating XML documents were directed to the abstract idea of collecting, displaying, and manipulating data).

The Court disagrees. A claim directed to improving the functionality of "one tool (e.g., error checking device) that is part of an existing system (e.g., data transmission error detection system) does not necessarily need to recite how that tool is applied in the overall system (e.g., perform error detection) in order to constitute a technological improvement that is patent-eligible." *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1151 (Fed. Cir. 2019). Unlike the cases cited by Motorola, claim 1 goes beyond merely monitoring and manipulating data and actually adjusts *how the media stream is provisioned* (*e.g.*, by adjusting components within the network and/or the media streams). Further, the specification explains that the adjustment is to ensure messages are received as intended. *See* '664 Patent, Dkt. No. 1-5 at 3:55–59.

Thus, Motorola has failed to establish claim 1 of the '664 Patent is directed to an abstract idea. The Court need not address step two. Consequently, Motorola has also failed to establish the remaining claims are directed to an abstract idea.

### 2. *The '802 Patent is Not Ineligible*

The '802 Patent, titled "Method and System for Managing Communication in Emergency Communication System," issued on January 29, 2008, and bears a filing date of January 20, 2005. '802 Patent, Dkt. No. 1-2 at Cover. The '802 Patent describes and claims systems and methods for the management of messages received simultaneously on different channels in a communication system. '802 Patent, Dkt. No. 1-2 at 1:46–58, 1:64–2:9.

The patent explains that emergency communication systems are used by different emergency service providers, such as the fire department, police, and hospitals. *Id.* at 1:13–15. Each of those providers may have its own communication system and associated channels of communication, with each channel dedicated to a group, locality, or unit. *Id.* at 15–18. Problems arise when a user in an emergency communication system receives a number of messages on different channels at the same time. *Id*. at 1:25–36, 6:53–56. The user needs to act on each incoming message, but cannot when overlapping messages interfere with one another, resulting in garbled or missed communications. *Id*. To avoid confusion, the operator typically mutes all but one channel in order to clearly hear the messages of the unmuted channel. *Id*. Muting channels may result in missing important information.

The claimed invention of the '802 Patent seeks to solve these problems by providing for storing and replaying audio or other emergency radio communication information so that information that would be obscured or otherwise unheard can be made intelligible to a listener. *Id*. at 1:46–49. The '802 Patent purports to solve this problem of receiving multiple messages that

8

overlap in time by prioritizing the messages, playing the highest priority message, and then storing and subsequently playing the additional messages in order of priority.

> Claim 1 of the '802 Patent recites:
>
> 1. A method of managing communication in a communication system, the communication system receiving messages from a plurality of channels, the method comprising:
> receiving a first message on a first dedicated channel from amongst the plurality of channels at the communication system, the plurality of channels being dedicated to different entities, the first dedicated channel being dedicated to receiving messages from a first entity;
> receiving a second message on a second dedicated channel being dedicated to receiving messages from a second entity from amongst the plurality of channels at the communication system, the second message overlapping with the first message in time;
> determining one or more priorities for the first message received on the first dedicated channel from the first entity and the second message received on the second dedicated channel from the second entity based on at least one pre-defined parameter;
> determining which message out of the first message and the second message should be stored and subsequently played based on the second message overlapping with the first message in time and one or more priorities assigned to the first and the second message;
> playing the message having a higher priority between the first and the second message;
> storing at least one message having a lower priority between the first and the second message based on the determination; and
> playing the stored message subsequent to completing playing of the message having higher priority.

*Id.* at 9:43–10:5.

Claim 1 is directed to managing communications in a system with multiple channels that involves simultaneously receiving messages on different channels, prioritizing the messages based on pre-defined parameters, playing higher priority message first, and storing and playing back any simultaneously received messages in their order of priority.

First, Motorola argues that claim 1 of the '802 Patent is directed to activities that have "been implemented by virtually any office worker in the past half-century who has operated a

9

phone with a switchboard and at least two lines." Motion, Dkt. No. 13 at 15. According to Motorola, claim 1 includes quintessential examples of the abstract ideas of organizing human activities performed by personal assistants and switchboard operators. *Id.* (citing *Parus Holdings*, 137 F. Supp. 3d at 672; *Voip-Pal.Com*, 375 F. Supp. 3d at 1134; *Telinit Techs.*, No. 2:14-CV-369, 2015 WL 5578604, at *16). In addition, Motorola argues that claim 1 can be analogized to Federal Circuit precedent finding claims to be abstract for merely organizing human activity. *Id.* (citing *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (holding claims reciting a method of (1) extracting data from hard copy documents using an automated digitizing unit such as a scanner, (2) recognizing specific information from the extracted data, and (3) storing that information in memory were directed to the abstract idea of data recognition and storage).

The Court disagrees. Motorola's strained analogy to human activity ignores that the previous solution to the identified problem was to focus on a single channel and mute the remaining channels. In addition, to the extent systems could save messages, the stored messages were sequenced in chronological order rather than in order of priority based on, for example, the content within each message. Therefore, claim 1 is dissimilar to the cases above cited by Motorola and bears similarities to the claims in *Packet Intelligence LLC v. NetScout Systems, Inc.*, 965 F.3d 1299 (Fed. Cir. 2020) (holding claims directed to identifying disjointed connection flows in a network environment by parsing packets to extract information and build a unique flow signature that is checked against a database were not abstract because they presented a solution to a challenge unique to computer networks and provided several steps detailing how the solution was achieved).

Second, Motorola argues that these claims are also analogous to cases finding claims were directed to the abstract idea of classifying and storing data. *Id.* (citing *In re TLI Commc'ns LLC*

*Pat. Litig.*, 823 F.3d at 610, 613 (Fed. Cir. 2016) (holding claims were directed to the abstract idea of classifying digital images and storing the images based on their classification).

However, a finding that *TLI* is sufficiently analogous to claim 1 would require eliminating the concrete, distinguishing elements, and then comparing the abstracted remnants of claim 1 to the claims at issue in *TLI*. The Federal Circuit has reiterated the Supreme Court's caution against "overgeneralizing claims" in the § 101 analysis. *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1293 (Fed. Cir. 2020).

To conclude, Motorola has failed to establish claim 1 of the '802 Patent is directed to an abstract idea. Thus, the Court need not address step two. Consequently, Motorola has also failed to establish the remaining claims are directed to an abstract idea.

### 3. The '830 Patent is Not Ineligible

The '830 Patent, titled "Access to Video Streams on Mobile Communication Devices," issued on March 31, 2015, and bears a filing date of August 8, 2008.'830 Patent, Dkt. No. 1-4 at Cover. The '830 Patent describes and claims methods for providing access to video streams associated with communication channels in a communication network. *Id.* at 1:7–9.

The patent explains that a communications system may include multiple cameras that provide video feeds that can be associated with communications channels. *Id.* at 2:31–43. Public safety and first responders as well as emergency response teams may use the video feeds to identify circumstances that call for their response. *Id.* at 7:39–42, 8:41–42. The '830 Patent explains that a host of video feeds may bombard a user with irrelevant information. *Id.* at 3:15–17.

The '830 Patent purports to solve this problem by providing an organized user interface and associated technology to filter the irrelevant and focus on the relevant information. *Id.* at 3:13–17 and 7:39–59.

11

Claim 1 of the '830 Patent recites:

> 1. A method comprising:
> monitoring a selection of a communication channel by a user of a mobile communication device;
> providing a plurality of radio frequencies on a display of the mobile communication device, each radio frequency being associated with a geographical zone from which a plurality of video feeds associated with the geographic zone are sourced;
> monitoring a selection of a radio frequency of the plurality of radio frequencies by the user.
> identifying at least one video feed by selecting the at least one video feed from the plurality of video feeds associated with the geographic zone, wherein the at least one video feed is associated with the selected communication channel based on a user policy that identifies one or more video feeds that are relevant to the user when the user accesses the selected communication channel, the one or more video feeds being independent of the selected communication channel; and
> providing access to the identified at least one video feed to the mobile communication device based on the user policy.

*Id.* at 12:18–39.

Claim 1 is directed to monitoring a user's channel selection, providing a plurality of radio frequencies associated with a geographic zone on a GUI, monitoring a user's selection of radio frequency, selecting relevant video feeds associated with that geographic zone, and then providing access to that video pursuant to a user policy.

First, Motorola argues that Claim 1 is analogous to claims the Federal Circuit has found to be abstract at step one. Motion, Dkt. No. 13 at 20–23 (citing *Elec. Power Grp.*, 830 F.3d at 1353 (holding claims directed an abstract idea because "[t]he advance they purport to make is a process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions"); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d at 1307 (holding claims reciting receiving e-mail (and other data file) identifiers, characterizing e-mail based on the identifiers, and communicating the

12

characterization were directed to the abstract idea of filtering emails); *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1017 (Fed. Cir. 2017) (holding claims broadly reciting "receiving" identity data of a client computer, "authenticating" the identity of the data, "authorizing" the client computer, and "permitting access" to the client computer were directed to the abstract idea of "providing restricted access to resources" because the claims did not cover a "concrete, specific solution")).

To justify its conclusion, Motorola tries to convince the Court to extract most of the claim elements and compare the remaining shell to the claims at issue in Motorola's cited cases. Without removing most of the claim elements, the Court recognizes relevant similarities between claim 1 and the claims other Federal Circuit decisions have found eligible at step one. *See Core Wireless Licensing SARL v. LG Electronics, Inc.*, 880 F.3d 1356 (Fed. Cir. 2018) (holding claims directed to an improved display interface that allowed users to access stored data and programs more quickly using small-screen electronics, thereby improving the efficient functioning of the computer were patent eligible); *see also Data Engine Technologies LLC v. Google LLC*, 906 F.3d 999, 1008–1011 (Fed. Cir. 2018) (holding claims directed to a specific method of navigating a three-dimensional electronic spreadsheet because advanced improved computers' functionality to instantly access all parts of complex 3D spreadsheet were patent eligible).

Second, Motorola argues that nothing in the claims recite an improvement to computer technology. Motion, Dkt. No. 13 at 23–24 (citing *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d at 1367 (holding claims reciting a system for providing web pages tailored to an individual user were directed to an abstract idea)).

Motorola's arguments are unpersuasive. Motorola collapses the claims to the solution achieved and contends that the claims are abstract. As previously mentioned, the Court recognizes

that the claims, with all elements intact, are comparable to claims that the Federal Circuit has found eligible.

In sum, Motorola has failed to establish claim 1 of the '830 Patent is directed to an abstract idea. Thus, the Court need not address step two. Consequently, Motorola has also failed to establish the remaining claims are directed to an abstract idea.

### B. Infringement Allegations

Motorola argues that STA's complaint does not satisfy the pleading standards because (1) STA's claim charts allegedly do not sufficiently plead infringement, and (2) STA's infringement allegations allegedly ignore critical claim limitations.

#### 1. *STA's Claim Charts Are Sufficient*

Motorola asserts that STA's complaint and accompanying claim charts are deficient. First, Motorola contends that the claim charts identify a multitude of disparate products devoid of any factual allegations providing how or why any product infringes. Motion, Dkt. No. 13 at 29–30 (citing *Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-CV-00300-JRG, 2018 WL 6981828, at *2 (E.D. Tex. Dec. 11, 2018)). Second, according to Motorola, STA fails to provide a single citation or source of any excerpted material, leaving Motorola to guess which products are accused and how those products are alleged to infringe. *Id.*

Here, the Complaint includes factual allegations in combination with screenshots for each asserted patent so Motorola's reliance on *Chapterhouse* is misplaced. *Fractus, S.A. v. TCL Corp.*, No. 2:20-CV-00097-JRG, 2021 WL 2483155, at *3 (E.D. Tex. June 2, 2021). At this stage, STA need not prove its case. *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)). The Complaint need only place Motorola on fair notice of infringement,

and the Court finds that it does. *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018). Viewing all facts and inferences in STA's favor, the complaint and accompanying claim charts plead a plausible claim of infringement.

### 2. *Any Alleged Deficiencies in the Claim Charts Does Not Doom the Complaint*

Next, Motorola argues that every claim chart fails to address several key limitations. Motion, Dkt. No. 13 at 31–35. According to Motorola, STA fails to establish a plausible claim of infringement for at least that additional reason.

"A plaintiff is not required to plead infringement on an element-by-element basis." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021) (citing *Nalco*, 883 F.3d at 1350 ("[T]he Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met.")). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955 (internal quotation marks and citation omitted). Motorola takes issue with STA's alleged failure to conclusively establish certain elements in its allegations, but that is not required at this stage. *Nalco*, 883 F.3d at 1350. In its argument, Motorola also identifies what it perceives as issues with STA's infringement contentions. The Court ignores those arguments as the infringement contentions are not essential to the adequacy of allegations in the complaint. Viewing all facts and inferences in STA's favor, the complaint and accompanying claim charts establish a plausible claim of infringement.

### IV.  CONCLUSION

For the reasons above, **IT IS RECOMMENDED** that the Motion (**Dkt. No. 13**) be **DENIED** in its entirety.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendations [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 7th day of July, 2023.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE