UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **STA GROUP LLC,**<br><br>    Plaintiff,<br><br>        - vs. -<br><br>**MOTOROLA SOLUTIONS, INC.,**<br><br>    Defendant. | Civil Action No. 2:22-cv-00381-JRG-RSP |
| **MOTOROLA SOLUTIONS, INC.,**<br><br>    Counterclaim Plaintiff,<br><br>        - vs. -<br><br>**STA GROUP LLC, DILLON KANE GROUP LLC, and INSTANT CONNECT SOFTWARE LLC,**<br><br>    Counterclaim Defendants. | |

**PLAINTIFF'S SUPPLEMENTAL OPENING CLAIM CONSTRUCTION BRIEF**

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ................................................................................................ 1

II.  LEGAL STANDARD .......................................................................................... 1

III.  PERSON OF ORDINARY SKILL IN THE ART ............................................. 4

IV.  CONSTRUCTION OF DISPUTED TERM ....................................................... 4

    A.  The '830 Patent ......................................................................................... 4

V.  CONCLUSION .................................................................................................. 11

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adv. Mktg. Sys., LLC v. CVS Pharmacy, Inc.*,
  Nos. 6:15-cv-134-JRG-KNM, 6:15-cv-137-JRG-KNM, 2016 WL 1741396
  (E.D. Tex. May 3, 2016) ................................................................................................7, 8

*Apex Inc. v. Raritan Computer, Inc.*,
  325 F.3d 1364 (Fed. Cir. 2003) .........................................................................................5

*Azure Networks, LLC v. CSR PLC*,
  771 F.3d 1336 (Fed. Cir. 2014) *cert. granted, judgment vacated*, 135 S. Ct.
  1846 (2015) ........................................................................................................................1

*CA, Inc. v. Netflix, Inc.*,
  No. 2:21-cv-80-JRG-RSP, 2021 WL 5323413 (E.D. Tex. Nov. 16, 2021) ........................7

*Chef Am., Inc. v. Lamb-Weston, Inc.*,
  358 F.3d 1371 (Fed. Cir. 2004) .........................................................................................1

*Comark Commc'ns, Inc. v. Harris Corp.*,
  156 F.3d 1182 (Fed. Cir. 1998) .........................................................................................2

*Cordis Corp. v. Bos. Sci. Corp.*,
  561 F.3d 1319 (Fed. Cir. 2009) .........................................................................................3

*GE Lighting Sols. v. AgiLight, Inc.*,
  750 F.3d 1304 (Fed. Cir. 2014) .........................................................................................3

*Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*,
  628 F.3d 1359 (Fed. Cir. 2010) ......................................................................................1, 4

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  358 F.3d 898 (Fed. Cir. 2004) ...........................................................................................3

*Lockheed Martin Corp. v. Space Systems/Loral, Inc.*,
  324 F.3d 1308 (Fed. Cir. 2003) .........................................................................................5

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ..................................................................................1, 2, 3

*Renishaw PLC v. Marposs Societa
  per Azioni*, 158 F.3d 1243 (Fed. Cir. 1998) ......................................................................1

*St. Isidore Research, LLC v. Comerica Inc.*,
  No. 2:15-cv-1390-JRG-RSP, 2016 WL 4988246 (E.D. Tex. Sept. 19, 2016) .................7, 9

i

*Syncpoint Imaging, LLC v. Nintendo of America Inc.*,
No. 2:15-cv-00247-JRG-RSP, 2016 WL 55118 (E.D. Tex. Jan. 5, 2016) .........................7, 10

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
299 F.3d 1313 (Fed. Cir. 2002) ....................................................................................................2

*Thorner v. Sony Computer Entm't Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012) ....................................................................................................3

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996) ......................................................................................................2

*Williamson v. Citrix Online, LLC*,
792 F.3d 1339 (Fed. Cir. 2015) ...........................................................................................5, 6, 8

**Statutes**

35 U.S.C. § 112 para. 6 ....................................................................................................... *passim*

**Other Authorities**

U.S. Patent No. 7,324,802 ...............................................................................................................1

U.S. Patent No. 8,489,134 ...............................................................................................................1

U.S. Patent No. 8,831,664 ...............................................................................................................1

U.S. Patent No. 8,994,830 .................................................................................................... *passim*

## I.      INTRODUCTION

Plaintiff, STA Group LLC ("STA Group"), and Defendant, Motorola Solutions Inc., ("MSI") dispute the appropriate construction of various terms of U.S. Patent No. 7,324,802 ("the '802 Patent"), U.S. Patent No. 8,489,134 ("the '134 Patent"), U.S. Patent No. 8,831,664 ("the '664 Patent"), and U.S. Patent No. 8,994,830 ("the '830 Patent") ("Asserted Patents"). Dkt. Nos. 132, 226. The majority of these terms have been fully briefed. Dkt. Nos. 159, 177, 181. Following the Court's entry of an Amended Docket Order (Dkt. No. 196) and extension of the case schedule, MSI challenged one additional claim term, "video stream association module," in the '830 Patent. As discussed below, this term is not subject to 35 U.S.C. § 112 para. 6 and should be construed according to its plain and ordinary meaning. MSI's position contradicts relevant case law, misinterprets pertinent language from the claim, relies on incorrect citations from the specification, and must be rejected.

## II.     LEGAL STANDARD

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). Accordingly, "[t]he claim construction inquiry. . . begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa per Azioni,* 158 F.3d 1243, 1248 (Fed. Cir. 1998). "Claim language is generally given its 'ordinary and customary meaning,' that is, 'the meaning that the language would have to a person of ordinary skill in the art in question at the time of the invention.'" *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1368 (Fed. Cir. 2010) (quoting *Phillips*, 415 F.3d at 1312-13).

Ordinary words, whose meaning is clear and unquestionable, absent any indication that their use in a claim should deviate from that clear meaning, are to be construed to mean exactly what they say. *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1372 (Fed. Cir. 2004); *Azure*

*Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014) (quotation marks omitted) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.") *cert. granted, judgment vacated*, 135 S. Ct. 1846 (2015).

Federal Circuit case law defines a specific hierarchy of evidentiary sources that should be considered when construing a disputed term. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) ("The claims, specification, and file history, rather than extrinsic evidence, constitute the public record of the patentee's claim…"). "In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term. In such circumstances, it is improper to rely on extrinsic evidence." *Id*. Consultation of the intrinsic record starts with the term's context in the asserted claim, as well as other asserted and non-asserted claims. *Phillips*, 415 F.3d at 1314. Next, "the specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.' " *Id.* (quoting *Vitronics Corp.*, 90 F.3d at 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because in the specification a patentee may give a claim term a different meaning than the term would otherwise possess, or may disavow claim scope. *Phillips*, 415 F.3d at 1316. The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc*., 299 F.3d at 1325.

However, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.' " *Comark Commc'ns, Inc. v. Harris Corp*., 156 F.3d 1182, 1187 (Fed. Cir. 1998) (*quoting Constant v. Advanced Micro-Devices, Inc*., 848 F.2d 1560, 1571

(Fed. Cir. 1988)); see also *Phillips,* 415 F.3d at 1323. "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

The prosecution history is another tool to supply context for claim construction. *Phillips,* 415 F.3d at 1317. However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips*, 415 F.3d at 1318.

Although extrinsic evidence can also be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). The *Phillips* Court warned that "heavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification." *Id.* at 1321.

"There are only two exceptions [when it is proper to deviate from the plain meaning of a term]: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). To act as his own lexicographer, a patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term." *GE Lighting Sols. v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014). Disavowal requires a "clear and unmistakable surrender." *Cordis Corp. v. Bos. Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009).

## III.    PERSON OF ORDINARY SKILL IN THE ART

Claim terms are viewed from the perspective of a person of ordinary skill in the art ("POSITA"). *Lazare Kaplan*, 628 F.3d at 1368. STA Group contends a POSITA would have had a bachelor's degree in electrical engineering, computer engineering, computer science, or a related field, and two to three years of experience in the design or development of telecommunication systems, or the equivalent. Additional graduate education could substitute for professional experience, or significant experience in the field could substitute for formal education.

## IV.    CONSTRUCTION OF DISPUTED TERM

### A.    The '830 Patent

| Claim Term | STA Group's Construction | MSI's Construction |
|---|---|---|
| video stream association module (Claim 15) | Plain and ordinary meaning. This term is not subject to 35 U.S.C. §112 ¶6.<br><br>Should the Court conclude that the term is subject to 35 U.S.C. §112 ¶6, Plaintiff proposes the following structures, acts, and materials that correspond to the element: 3:3-15, 21-36, 44-57; 4:1-9, 29-67; 5:23-67; 6:3-66; 7:4-59; 8:16-64; 9:1-59; 10:13-67; 11:1-45; Figs 1A-11 and equivalents thereof. Plaintiff agrees with Defendant's identification of function. | Subject to 35 U.S.C. § 112 ¶6<br><br>Function: monitoring a selection of a communication channel…, providing a plurality of radio frequencies on a display…, monitoring a selection of a radio frequency…, identifying at least one video feed…, providing access to the identified at least one video feed…<br><br>Structure: "a variety of software applications and/or hardware that can monitor and process communications between the communication devices," as described at 3:46-49 and FIGs. 2-4, 8-9, 11 and associated text. |

4

The Court should find this claim term is not a means-plus-function limitation and construe the term according to its plain and ordinary meaning because:

- a processor is a structure by definition, and the video stream association module works in conjunction with the processor; and
- Claim 15 recites an algorithm to be performed by the module.

"A means-plus-function limitation recites a function to be performed rather than definite structure or materials for performing that function. Such a limitation must be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1318 (Fed. Cir. 2003) (citations omitted).  Importantly, § 112, para. 6 does not apply when "the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015) (citations omitted). "[T]he failure to use the word 'means'… creates a rebuttable presumption … that § 112, para. 6 does not apply." *Id.* at 1348.  The presumption can be overcome only if the challenger demonstrates by a preponderance of the evidence that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for  performing that function. *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1371-72 (Fed. Cir. 2003).

The portion of Claim 15 in which the disputed term appears recites:

15. An apparatus, comprising:
at least one processor; and
a memory in communication with the at least one proces-
    sor, the memory being configured to store a video stream
    association module executable by the at least one pro-
    cessor, and the video stream association module being
    executed by the at least one processor to cause opera-
    tions to be performed, the operations comprising:
monitoring a selection of a communication channel by a
    user of a mobile communication device;
providing a plurality of radio frequencies on a display of
    the mobile communication device, each radio frequency
    being associated with a geographical zone from which a
    plurality of video feeds associated with the geographic
    zone are sourced;
monitoring a selection of a radio frequency of the plurality
    of radio frequencies by the user;
identifying at least one video feed by selecting the at least
    one video feed from the plurality of video feeds associ-
    ated with the geographic zone, wherein the at least one
    video feed is associated with the selected communica-
    tion channel based on a user policy that identifies one or
    more video feeds that are relevant to the user when the
    user accesses the selected communication channel, the
    one or more video feeds being independent of the
    selected communication channel; and
providing access to the identified at least one video feed to
    the mobile communication device based on the user
    policy.

As the claim does not use the word "means," it is presumptively not subject to § 112, para. 6. As the claim language, read in light of the specification, recites sufficiently definite structure, MSI cannot overcome that presumption, and § 112, para. 6 does not apply.

MSI argues the claim term is subject to § 112, para. 6 by relying on its expert witness, Dr. Almeroth, to opine that "'module' is nothing more than a nonce term." Ex. A, Almeroth Decl. at ¶ 31. Specifically, Dr. Almeroth testified that "a video stream association module, as that term is used in claim -- in the claim at issue here, is a nonce term." Ex. B, Almeroth Tr. at 13:16-21. However, the claim limitation in question is not merely the introductory phrase "video stream association module"—the claim term in question is the entire passage. *See Williamson*, 729 F.3d at 1350 ("[T]he claim limitation in question is not merely the introductory phrase … but the entire

6

passage…"). The claim term as a whole specifically recites structures, including a memory and a processor.

This Court has found the word "processor" to connote sufficient structure to remove a claim limitation from § 112, para. 6 in numerous cases. *See Adv. Mktg. Sys., LLC v. CVS Pharmacy, Inc.*, Nos. 6:15-cv-134-JRG-KNM, 6:15-cv-137-JRG-KNM, 2016 WL 1741396, at *20 (E.D. Tex. May 3, 2016) ("[P]rocesser is not a generic nonstructural term such as means, element, and device that typically do not connote sufficient structure. The claims at issue provide further evidence of structure by describing physical connections between the data processor and other claimed elements." (citing *Williamson*, 792 F.3d at 1350)); *CA, Inc. v. Netflix, Inc.*, No. 2:21-cv-80-JRG-RSP, 2021 WL 5323413, at *21 (E.D. Tex. Nov. 16, 2021) ("Courts in this district, as well as other districts, have concluded that in many instances, 'processor,' like 'circuit' or 'logic,' may connote sufficiently definite structure, and is not a 'nonce' or 'functional' word that is automatically subject to the limitations of § 112, ¶ 6." (collecting cases)).

Moreover, sufficient structure is connoted when the claim discloses an algorithm, or objectives and operations. *See St. Isidore Research, LLC v. Comerica Inc.*, No. 2:15-cv-1390-JRG-RSP, 2016 WL 4988246, at *13 (E.D. Tex. Sept. 19, 2016) ("The claim as a whole discloses a series of steps the module performs when it is in operation. That is, Claim 1 discloses an algorithm. . . . The algorithm connotes structure."); *Syncpoint Imaging, LLC v. Nintendo of America Inc.*, No. 2:15-cv-00247-JRG-RSP, 2016 WL 55118, at *20 (E.D. Tex. Jan. 5, 2016) ("[O]ne of ordinary skill in the art would understand the structural arrangements of the processor from the recited objectives and operations of the processor.").

A POSITA would understand the words of the claim to have a sufficiently definite meaning as a structure, and that a processor is a structure by definition. Ex. C, Akl Decl. at ¶¶ 33-34; *see*

*also Williamson*, 792 F.3d at 1349. A POSITA would further understand the connection between the processor and remaining limitations of Claim 15, including the video stream association module, from both the specification and the language of Claim 15. Ex. C, Akl Decl. at ¶¶ 35-36; *see also Adv. Mktg.*, 2016 WL 1741396, at *20.

The structure recited in the claim is further underscored by the teachings of the specification of the '830 Patent, which disclose the following associated structures.

- A communication system which hosts a video feed association module, configured to associate one or more video feeds. '830 Patent at Fig. 1A, 3:3-8, 3:21-24.

- A communication system with one or more video feeds associated with one or more communication channels at a central location. *Id.* at Fig. 1B, 3:30-33, 4:29-33, 4:34-39.

- An apparatus associating video feeds with a communication channel, including memory for storing and operating system and application software. *Id.* at Fig. 2, 4:40-54.

- A schematic diagram of a system, wherein video feeds are associated with a communication channel. '830 Patent at Fig. 3, 4:61-63.

- A computing system including a processor and memory, each including instructions. *Id.* at Fig. 11, 11:3-6.

As seen below, Figure 2 discloses an apparatus to associate video feeds, including memory for storing and operating system and application software to perform the claimed functions.

8



*FIG. 2*

In Figure 2, the video feed association module 120 is a part of the operating system/application software 202. Thus, in the context of the surrounding claim language and specification, a POSITA would readily understand the term "video stream association module" not to be purely functional language. Dr. Almeroth admitted that the structure disclosed in Figure 11, which includes both a processor and memory, corresponds with the video feed association module. Ex. B, Almeroth Tr. at 90:18 – 91:9. Specifically, Dr. Almeroth also testified that "other than structural equivalents" Figure 11 "would be what would be referenced as the disclosed structure." *Id*. at 91:1-2.

Moreover, a POSITA would understand structure to be provided in the form of an algorithm or series of steps to be performed by the video stream association module in conjunction with the processor. Ex. C, Akl Decl. at ¶¶ 37-38; *see also St. Isidore*, 2016 WL 4988246, at *13. In other words, the claim provides the "objectives and operations" of the processor to connote

sufficient structure. *Syncpoint*, 2016 WL 55118, at *20. The specification of the '830 Patent provides the following algorithmic steps for performing the recited function:

- A flow diagram of association of video feeds with a communication channel. '830 Patent at Fig. 4, 6:18-21.

- A flow diagram identifying channels with which to associate video feeds. *Id.* at Fig. 5, 7:4-9.

- A flow diagram of a general overview of a method for associating video feeds with communication channels based on an audio event. *Id*. at Fig. 6, 8:34-51.

- A flow diagram associating video feeds with communication channels based on an audio event. *Id.* at Fig. 7, 8:52-64.

Dr. Almeroth further admitted that a POSITA would have an understanding of "software module," (Ex. B, Almeroth Tr. at 84:21 – 85:6), and that "a person of skill in the art would have a general sense of what a video stream would be" (*id*. at 21:13-25). Thus, a video stream association module would have been readily ascertainable by a POSITA to connote structure, potentially in the form of software.

Finally, MSI cites the '830 Patent at column 3, lines 46-49 in support of its proposal to use "a variety of software applications and/or hardware" as a structure for the allegedly functional "video stream association module." However, this passage describes "communication service 156," not video feed association module 120. When confronted with this fact, Dr. Almeroth refused to identify parts of the specification that describe the video feed association module 120 instead of the communication service 156. *See* Ex. B, Almeroth Tr. at 35:15-25, 48:3 – 54:20. On its face, MSI's proposed construction is simply a recipe for further dispute.

10

## V.      CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests the Court adopt Plaintiff's

proposed construction.

Dated: February 2, 2024                    Respectfully submitted,

                          By:    */s/ James A. Shimota*

                                 James A. Shimota (admitted p.h.v.)
                                 Illinois Bar No. 6270603
                                 Patrick D. Richards (admitted p.h.v.)
                                 Illinois Bar No. 6272930
                                 K&L GATES LLP
                                 70 West Madison Street, Suite 3300
                                 Chicago, Illinois 60602
                                 Telephone: (312) 372-1121
                                 Fax: (312) 827-8000
                                 jim.shimota@klgates.com
                                 patrick.richards@klgates.com

                                 Brenna Legaard (admitted p.h.v.)
                                 Oregon Bar No. 001658
                                 Janjeera S. Hail (admitted p.h.v.)
                                 Oregon Bar No. 225528
                                 K&L Gates LLP
                                 One SW Columbia Street, Suite 1900
                                 Portland, Oregon 97204
                                 Telephone: (503) 228-3200
                                 Fax: (503) 248-9085
                                 brenna.legaard@klgates.com
                                 janjeera.hail@klgates.com

                                 Henry Pogorzelski
                                 Texas Bar No. 24007852
                                 K&L Gates LLP
                                 2801 Via Fortuna, Suite 650
                                 Austin, TX 78746-7568
                                 Tel: (512) 482-6826
                                 henry.pogorzelski@klgates.com

                                 Victoria Forson
                                 Texas Bar No. 24118212
                                 K&L Gates LLP
                                 1717 Main Street, Suite 2800
                                 Dallas, TX 75201
                                 Tel: (214) 939-5500
                                 victoria.forson@klgates.com

J. Wesley Hill
Texas Bar No. 24032294
wh@wsfirm.com
Andrea L. Fair
Texas Bar No. 24078488
andrea@wsfirm.com
Ward, Smith & Hill, PLLC
1507 Bill Owens Parkway
Longview, Texas 75601
Telephone: (903) 757-6400
Fax: (903) 757-2323

*Counsel for Plaintiff STA Group LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Respectfully submitted,

*/s/ Henry Pogorzelski*
Henry Pogorzelski